Angel Young on behalf of Zainado Mendez At what point does an expert's testimony become impermissible opinion testimony under Federal Rule of Evidence 704B? 704B prohibits an expert from stating an opinion or inference as to whether a defendant did or did not have the requisite mental state constituting an element of the offense charged. The issue is basically, other than outright opining that, yes, I believe the defendant had the requisite mental state, at what point does an expert's opinion cross that line into the prohibited territory of 704B? Mr. Mendez was charged with two counts of distributing a methamphetamine. The only issue at trial was whether or not he knew that the substance was methamphetamine. There was basically two main pieces of evidence with regards to this issue. One was that of the testimony of the confidential informant, Jose. Here we have a professional informant who has been paid a handsome amount of money in the last three years by the DEA, over $130,000, has made over 100 cases for the DEA, has stated that the more cases he makes, the more money he makes. And then we have the testimony of the government's expert, Thomas Salzberg. He was not involved in the investigation of this case, basically came on board a week and a half before trial and said that he had examined the transcripts of the recorded conversations between Jose and Mr. Mendez and the reports prepared by the DEA agents. And he testifies in regards to the various things. Are you suggesting that he weakened his status as an expert? I'm sorry? Are you suggesting that there's some negativity of the fact that he hadn't participated in the workup of the case? No, I am not, Your Honor. Okay. The reason I'm asking that is I authored an opinion, a hermeneutic opinion, where the big argument was that the government's expert was disqualified or should have been impeached because he had participated in the workup of the case. I'm not contesting that. Okay. Mr. Salzberg testified in regards to after reviewing the transcripts, he discusses the various drug jargon that's used, basically interprets it consistent with distribution of methamphetamine, analyzes my client's driving patterns according to the DEA agent's descriptions and states that he was engaging in counter surveillance techniques. And then all of this basically culminates with his testimony that my client had extensive knowledge in the dealing of methamphetamine and even knew how long other people had been dealing in certain narcotics and I think that he had said that his supplier had been good for one year. It's basically a paraphrase of what Mr. Salzberg says. So he basically says that my guy knows that this is methamphetamine. No, I think he said that he had knowledge of drug transactions. That could indicate that he was an undercover police officer, that he was a sociologist who was studying this to complete a dissertation or something else. I mean, the expert had already stated that in looking at the transcripts, his opinion is that this is consistent with distribution of methamphetamine. For him to go one step further and say that my client has specific knowledge as to methamphetamine. I mean, because basically the issue is whether or not... Didn't he say drug transactions? He didn't say that this man knows methamphetamine, but he knows drug transactions. Based upon the coded language, you know, do you have Mrs. Murphy for me today? No, but I've got, and I'm making this up, this is my own drug coded. Do you have Mrs. Murphy for me? No, I've got Junior Murphy and he'll be over in 50 minutes and that means something. You know, you've got a lot of drugs and it's going to cost you $50 an ounce or something. Isn't that what he testified to? He did testify as to that. At that point, he did not specifically state that my client knew that this was methamphetamine. It's only at the end of his testimony did he say that he had knowledge in the dealing of methamphetamine. Basically, it's that he said my client had the knowledge and basically opined as to what my client's mental state was. When the issue being at trial was basically, did Mr. Mendez know that the substance in which he was conversing about with Jose was methamphetamine? Well, if the question, was it proper to have an expert testify as to whether the words being used in this transcript were indicative or consistent with transactions in methamphetamine? Say consistent with. I'm sorry, I'm not quite sure what... If he had opined that I have read this transcript and the conversation in this, that I am reading here is consistent with someone who is dealing in methamphetamine. That would be different than him. That would be one thing. But then he took one step further and said that my client had the knowledge and spoke to specifically my client's knowledge. Well, what it says in the transcript was, his first answer was... I'm sorry, his answer was, based on my review of the transcripts, it appeared as though the defendant had extensive knowledge in the dealing of methamphetamine. And then he adds, he even knew how long other people had been dealing certain narcotics. Again, that could be consistent with a range of things. He didn't say, it's clear that this man was dealing. It was that he had extensive knowledge in the dealing of methamphetamine. He could have been an undercover police officer. He could have been a DEA informant. He might have been a sociologist. Or he might have been somebody on the periphery of drugs going around him, but perfectly clean. That could be true, but given the overall context of the trial, given the fact that Jose was saying that, yes, this is methamphetamine, and then on top of having Mr. Salisbury say, the coded words mean methamphetamine, and then on top of all of that say that my client has specific knowledge in the dealing of methamphetamine, when he's being charged with distribution of methamphetamine, is basically saying, yes, he knew that it was methamphetamine, and that's the main issue. The location of his mental state, that is, his mental state is a knowledge of methamphetamine trafficking in the context where he's basing that on the very transaction which is the subject of dispute. Does he have knowledge about this transaction? Yes. Therefore, he knowingly is dealing in methamphetamine. Yes. But if the expert had said his statements are consistent with someone who is familiar with methamphetamine transactions, then that would have been okay? I think that would be a different situation. So the statements are consistent, but not a question about his mental understanding. Is that the distinction you're asking us to draw? Yes. If you have no further questions, I'd like to reserve my remaining time. Sure. May it please the Court. Mark Chiles on behalf of the United States. There's really two issues that are presented before the Court today. The first issue is whether or not did the snippet of the expert's testimony that the defendant has complained about in his moving papers, did that snippet violate 704B? And then secondly, if that is, in fact, if that snippet was a violation of 704B, was that harmless error? And the government submits that the answer to the first question is no. The government, the expert testimony did not violate 704B. And the answer to the second question from the government is that even if it did cross over into the province of 704B, it was harmless error given the overwhelming amount of evidence in this case. First, we have to take a step back and take a look at 704B. That precludes an expert from opining or giving statements that infer on a defendant's state of mind that is an element of the crime charged. Here, the defendant was charged, as previously discussed, with two counts of distribution of methamphetamine. The two elements, there's really two elements in distribution of methamphetamine. One, the defendant intentionally delivered methamphetamine. And then secondly, that the defendant knew at the time he delivered the methamphetamine on the dates charged in the indictment that it was, in fact, methamphetamine that he was delivering. So his knowledge on the date in question is critical. Correct. On two dates. It would be on October 11th when the defendant delivered an ounce of methamphetamine, and then on November 2nd when the defendant delivered half a pound of methamphetamine. The government was able to prove that the defendant intentionally and knowingly delivered the methamphetamine on both those dates because it seized the methamphetamine, tested it, and came back positive that it was meth. Now, as to the only issue as described by the appellant's brief, and that was at issue during the trial concerning the mens rea requirement for distribution of methamphetamine, was specifically that whether the defendant knew he was distributing meth on October 11th and November 2nd. Here, the governance expert didn't opine at any time as to the defendant's knowledge of distributing cocaine on the dates charged, specifically October 11th or November 2nd. Specifically, the government expert never opined or inferred the defendant knew he was distributing, I'm sorry, it's methamphetamine on October 11th or November 12th. There simply wasn't any testimony from the governance expert as to the specific mens rea element for distributing methamphetamine. Therefore, the government's expert didn't, testimony didn't run afoul of 704B. It was, in fact, 704A testimony, which is permissible. The cases that have been cited by the government, in particular Morallo as well as Gonzales, specifically state that for an opinion, that 704A evidence is permissible and is allowed by experts in order for them to give their opinions regarding the ultimate factual issue. There's only a limited, and in Morallo, the Ninth Circuit expressly says, it's a limited exception to this general rule that exists in criminal cases, in that the expert witness may not testify as to the mental state of the defendant in a criminal case when the mental state constitutes an element of the crime charged. And in both Gonzales and both Morallo then expressly carve out what exactly is meant by when the expert crosses over into the 704B territory as opposed to simply opining on his experience and whether or not the information that's been provided to the expert is consistent with his experience of drug dealing or in many of the cases whether or not the amount of drugs was sufficient for distribution purposes or for personal use. And what in Morallo the Court said is that in that particular case, the expert did not render an explicit opinion of the defendant's state of mind or knowledge of his transportation of drugs essentially on the date in question. And so that didn't violate 704B. And Gonzales is the same holding, that in the case at hand in Gonzales, you had a defendant who was transporting narcotics and he was caught with possession of a controlled substance and he was charged with possession of a controlled substance with intent to distribute. The defendant was arrested and he was found with a backpack and he had narcotics on him as well as a scale and a payo sheet. And the DA expert in that particular case testified as a hypothetical, if the amount found along with the payo sheets and the drugs, would that likely be, in your opinion, for distribution rather than personal use? And the DA expert said that based on the weight that he found, that was found in the hypothetical, that the drugs were likely for distribution. And the defendant appealed in that case specifically on what the defendant appeals here. The defendant says in that particular case that the testimony was expert opinion about the defendant's mental state in 704B. And the holding in Gonzales is important because the Court in that particular case said that the expert never directly and unequivocally testified to the defendant's mental state. He never stated directly that the defendant had the intent to distribute. And that's exactly what happened in this particular case. That's right. In this case, it's not a hypothetical. I think the problem in this case, and why the line drawing is difficult, is that the expert is talking about his knowledge based on the transcript, the very transaction that's at issue. Isn't that correct? Not quite, Your Honor. The way the questions break down. The transcript that he's looking at. The transcript is ER 608. Right. No, but I'm sorry. What is the transcript that he refers to? Based on my review of the transcripts. Correct. The transcripts of what? Transcripts of the undercover tapes that were involved in this particular transaction. He was interpreting the conversation, the tape of the conversation, which is the drug deal that's going down at that time. But it was – there were actually four audio tapes and transcripts. Not all of them were – there were two on the date in question and the two preceding the dates in question, in which the defendant is using coded language that's indicative of drug dealing. But at least some of the transcripts that's embedded in the expert's answer are transcripts of the drug deal for which he's charged. That is correct, Your Honor. Okay. And then the expert says, I've listened to words he's using and based on the words he's using on the transaction at issue, it's my opinion that he has extensive knowledge in the dealing of meth. That's correct, Your Honor. Which the jury is supposed to say he has general knowledge. It's sort of hypothetical. Why wouldn't they make the immediate inference that these words indicate he knows on the day in question because that's what the expert's interpreting, that he's dealing in meth? The short answer is it's because the defendant could be – even though he's expressing his knowledge and proficiency in drug dealing or drug distributing or even drug negotiations, that it could be all bluffing. It could be simply false advertising or simply he was trying to ingratiate himself with this particular confidential informant for various purposes. There isn't – there wasn't a direct statement by the expert that on this particular date, the defendant knew it was methamphetamine that was being delivered. All the expert is doing here is simply – the expert has to actually say the words? Isn't it something lesser than that? No, I agree it's something lesser than that. But I think the case law has been – in order to cross over that the words that the vice-surgeant uses in Morello, Gonzalez, as well as – as well as Campos and Kinsey that are cited in our brief, is that the jury has to be left with really no other option that in fact – actually, a better statement is either Gonzalez or Morales, where the testimony must compel the inference – that the testimony must compel the inference for the jury to find the requisite mens rea. I mean, the jury has to be left with no other option. And I have 30 seconds left, and I – in switching gears, I'd like to go to the harmless error argument. As the Court is well aware, reversal is not required unless it's more probable than not the error materially affected the verdict. Here, we're talking about one snippet, one paragraph – or really two sentences out of 68 pages of transcript from the expert, and the expert's testimony outside of those 68 pages aren't even an issue here. Case law is clear, and the defendant doesn't even argue that the defense – that the expert can opine and testify about vague encoded language, about drug modus operandi, and about counter-surveillance techniques. And really what happened in this particular case is that the expert provided an argumentative statement. He drew an inference that the prosecutor could obviously argue at the closing – at closing that, in fact, all the information that the expert had testified to indicates that this defendant has knowledge concerning methamphetamine because he's using counter-surveillance techniques. He engaged in vague encoded language that was indicative. He knew the prices and the quantities of the street value of methamphetamine and accurately recited those prices and quantities during the taped conversations. Finally, there was overwhelming evidence that the defendant is guilt, and if there was any error, it didn't materially affect the verdict. Quite briefly, Your Honor, there were audio tapes. There were video tapes. There was surveillance. And it's all in my brief. Thank you. Well, just one question. Sure. If the only transcripts that the expert had reviewed were the transcripts of this transaction, then that would violate Rule 704B, would it not? In other words, he's looking at this transaction only and said, Well, based on that, I find that he had general knowledge, that he had knowledge of methamphetamine deal. Well, no. He actually, during the course of the conversation on these tapes, the defendant talks about other drugs, I believe, including heroin. So there's other areas in which the defendant displays his proficiency at drug transactions besides That's not what he said in the transcript. That's not what Mr. Salisbury testified to, the extensive knowledge of methamphetamine. Okay. As to that particular snippet, since methamphetamine was involved, they did talk about other quantities of methamphetamine throughout their transcripts. So he didn't opine that the defendant, specifically in this instance, knew he was delivering an ounce and a pound. There was other discussions about other quantities and other prices, including a five-pound deal that never materialized, that wasn't the subject of this, of the indictment. So I would submit, based on that, that it does blur. But if it does fall into 704B, it's clearly harmless there. That's a difficult line, as we've acknowledged in our opinions. Thank you. In regards to the cases that the government cites, they specifically argue Murillo and Gonzalez. I think that these cases basically demonstrate the line that we're discussing. Both Murillo and Gonzalez's expert testimonies talked about — for example, in Murillo, the expert testimony was in regards to the modus operandi of drug carriers. In Gonzalez, the expert was testifying as to whether a particular amount of drugs found on a person would indicate whether it was possessed for use or distribution. In both of those cases, the experts were discussing a hypothetical situation, basically indicating whether or not the defendant — whether a hypothetical defendant with this particular factual situation would or would not need a particular M.O. or would not be possessing a particular amount of drugs for use or distribution. That is not — that is clearly not the case with the situation with Mr. Mendez. In regards to the government's harmless error argument, there was — the government's evidence basically consists of the recorded meetings between Mr. Mendez and the confidential informant. Basically, the confidential informant's testimony that this is methamphetamine and Mr. Salisbury's testimony that this is methamphetamine. As I've already discussed, Jose is a person of questionable credibility. And moreover, every time — there was no — there may have been drugs found in this case, but there is nothing to indicate that the drugs did or did not come from Jose and whether or not the money passed between Jose and Mr. Mendez. There is no evidence that Mr. Mendez possessed the money. And so basically all we have here is the testimony of Jose that this is methamphetamine and the testimony of Mr. Salisbury that this is methamphetamine. And that is basically the testimony that Mr. Salisbury gave, that this — that Mr. Mendez had the knowledge that this is methamphetamine goes to exactly the heart of the trial, and that more likely or not more likely affected the verdict in this case. Thank you very much. Thank you. The case just argued will be submitted. We appreciate the argument of both counsel in this one.
judges: Fisher, Bybee, Mahan